[Civ. No. 23100. Second Dist., Div. One. July 9, 1958.]

ALTA MAE MATTISON, Appellant, v. W. L. LICHLYTER, Respondent.

Dally & Saulque for Appellant.

Enger & Yardum for Respondent.

FOURT, J.—This is an appeal from an order quashing service of summons, opening a default and vacating a default judgment.

The plaintiff filed her complaint on January 25, 1955, in which she set forth four causes of action. On January 26, 1955, the defendant Lichlyter was personally served with a summons and complaint in the action in Los Angeles County. At the time of the service of the summons and complaint the said defendant was a resident of Colorado, and prior thereto had for two years been a resident of the State of Oklahoma. The defendant was present in the State of California on January 26, 1955, for the sole purpose of appearing as a witness for and in behalf of the People in a criminal action, namely, *People* v. *Novelli* (Superior Court No. 165882), then pending in Los Angeles County. Lichlyter arrived in Los Angeles on or about January 24, 1955, and did testify in the criminal case on behalf of the People, and was in attendance at such trial from January 25, 1955, to February 1, 1955. Immediately after the conclusion of the trial, Lichlyter left the State of California and returned to his residence in Colorado.

It was stipulated at the oral argument, in effect, that Lichlyter was in fact extradited from Colorado for the purpose of having him appear as a witness in the criminal case.

The plaintiff has set forth in an affidavit that she was not aware of the circumstances under which Lichlyter was served.

Lichlyter advised the process server in the first instance that he was a resident of Colorado and explained why he was in the State of California, and that he was immune from service

of process as a result thereof. Lichlyter then consulted with the district attorney and other attorneys and was told, in effect, that he was immune from service and that a default judgment could not be taken against him. He did not discover that a default judgment had, in fact, been entered against him until July 22, 1957, and immediately thereafter made a special appearance and motion, the results of which we are herewith concerned.

The plaintiff, on October 13, 1955, filed a request for the entry of a default dated June 25, 1955. Apparently there was no summons in the superior court file at that time. On October 27, 1955, the plaintiff filed another request for entry of default, and filed at the same time the summons showing the service on Lichlyter on January 26, 1955.

During September of 1956, the plaintiff substituted attorneys. In October, 1956, a Richard Elliott was engaged by the plaintiff's attorneys to contact Lichlyter for information to the end that a military affidavit could be prepared and filed. Elliott set forth in an affidavit that he had talked with Lichlyter in Los Angeles County on October 26, 1956, and that he had told Lichlyter that a judgment was held against him, and that he had asked Lichlyter if he would not pay something on it, and further that Lichlyter was told the names of the plaintiff's attorneys. (The statement made by Elliott to Lichlyter to the effect that a judgment was held against him by the plaintiff was an obvious untruth for the reason that the judgment was not secured until November 29, 1956, and entered the next day.)

On September 3, 1957, Lichlyter made a motion to quash service of summons, to open the default and to vacate the judgment entered in the action. In support of the motion Lichlyter submitted an affidavit which sets forth how and in what fashion he was served, and other matters some of which have been heretofore set forth. He did not allege generally, nor did he set forth any facts to show that he had a meritorious defense to the causes of action set forth in the complaint, and no evidence was introduced at the hearing to show that he had any meritorious defense. The trial court granted the defendant's motion.

The question before us is, whether such an order can be made without the moving party showing by affidavit or other evidence that he has a meritorious defense to the action.

We believe that under the circumstances of this case the order made by the trial court was proper.

Appellant has cited the cases of *Matson* v. *John Batto & Sons*, 173 Cal. 800 [161 P. 1144] ; *Lee* v. *Colquhoun*, 175 Cal. 16 [164 P. 894], *Brozey* v. *Alesen*, 116 Cal.App. 641 [3 P.2d 68], to support her contention that a showing of a meritorious defense must be made before a default judgment can be set aside.

A reading of the cases cited, and of the cases cited therein as authority for the decisions arrived at, discloses that none of them is a case involving a witness appearing from a foreign jurisdiction to testify in a criminal case in this state.

 The general rule is set forth in 72 Corpus Juris Secundum (Process), section 80, page 1113, wherein it is said:

"It is almost universally recognized, . . . that witnesses in attendance on a court outside the territorial jurisdiction of their residence are immune from service of civil process, while attending court, and for a reasonable time before and after, in going to court and returning to their homes; and this immunity is not taken away by a statute prohibiting arrest of persons attending courts as witnesses." It is further stated at page 1117, "The exemption of nonresident witnesses or suitors from service of process rests on grounds of public policy and due administration of justice, and, while personal in its nature, is for the benefit of the court rather than of witnesses and parties."

Substantially the same rule is expressed in 42 American Jurisprudence (Process), sections 135-142.

Many California courts have, in effect, followed the rule as above set forth: see *Murrey* v. *Murrey*, 216 Cal. 707 [16 P.2d 741, 85 A.L.R. 1335] ; *Hammons* v. *Superior Court*, 63 Cal. App. 700 [219 P. 1037] ; *Von Kesler* v. *Superior Court*, 109 Cal.App. 89 [292 P. 544] ; *Gerard* v. *Superior Court*, 91 Cal. App.2d 549 [205 P.2d 109] ; see also 85 A.L.R. 1335, and note.

 In a recent case,*Velkov* v. *Superior Court*, 40 Cal.2d 289 [253 P.2d 25, 35 A.L.R.2d 1348], the court stated at pages 291-292:

"It is a rule of general application that, during a period reasonably necessary to the giving of testimony in a judicial proceeding, a nonresident witness who enters a state primarily for that purpose is immune from service of summons. (Citing cases and authority.) The rule is based upon public policy and, even though in derogation of the rights of the individual litigant, is justified by the public interest served by the granting of immunity.

64

■ "In its common law inception, the privilege was that of the court and was formulated to prevent interruptions and delays in judicial proceedings occasioned by necessary participants being required to defend against other actions. (Citing case.) The courts increasingly have emphasized the interest advanced by the voluntary appearance of a nonresident who could not otherwise be made to testify. In such cases, immunity is an inducement to the witness to appear and is said to be his substantive right. (See *Murrey* v. *Murrey, supra,* p. 710; note 5 Cal.L.Rev. 347.) Under this reasoning, the privilege has been extended to situations other than those involving strictly judicial proceedings. (*Thorp* v. *Adams,* 58 Hun. 603 [11 N.Y.S. 479] [appearance before legislative commission]; *Matthews* v. *Tufts,* 87 N.Y. 568 [62 How. Prac. 508] [hearing before referee in bankruptcy]; *Burroughs* v. *Cooke & Willis,* 56 Okla. 627 [156 P. 196, L.R.A. 1916E 1170] [taking of deposition]; *Filer* v. *McCornick,* 260 F. 309 [bank president attending meeting necessary to the war effort in time of emergency].)"

In *Feister* v. *Hulick,* 228 F. 821, at pages 822-823, it is said: "Immunity from arrest, or service of process, does not, in cases of this kind, flow from any privilege of the defendant. It is the consequence of the application of a legal principle, the benefit of which a particular defendant happens to get. The principle is founded upon a policy of the law and the recognition of a legal doctrine. It is part of the policy of the courts to brook no interference with their efforts to administer justice. It is the policy of the law that each court shall render to every other court the at least negative aid of not interfering with its administration of justice. Out of the enforcement of this policy has sprung the doctrine of comity. No court will direct its process to be served upon litigants before another court where it would protect its own litigants from a like service. Every court will aid every other court by permitting attendance upon one free from the danger of service of process by another. All courts recognize this principle of immunity involved. They do not, however, give it the same application. Some apply it under circumstances where others do not."

It would be difficult to imagine a case more violative of the policy described in the cases just mentioned, than the case before us, or one more clearly justifying the granting of a proper motion.

In *Murrey* v. *Murrey, supra,* it is said (at p. 710):

"Defendant admits that if the exemption exists in his favor, it exists solely as a matter of public policy. There is neither a federal nor a local statute conferring the exemption.

"Under the common-law rule as developed in England, there is no doubt that the exemption here claimed did not exist. Under the early common-law rule, the exemption extended only to parties to judicial proceedings and their witnesses, and members of the court, whose duties required their attendance upon the court and whose presence was necessary to the court in the performance of its functions. Originally this privilege of exemption from service was deemed a privilege of the court and not a privilege of the individual. In more recent years, it has come to be recognized as a substantive right of the individual. It has been frequently stated that this 'judicial' privilege exists as a matter of established public policy and rests upon sound principles of justice and right. (Citing cases.)

"This exemption from service of process is, of course, in derogation of the right which every creditor has to collect his debt by subjecting his debtor to suit in any jurisdiction where he may find him. Since this is so, the privilege should not be extended beyond the reason of the rule upon which it is founded. (Citing case.) California, as a matter of public policy, recognizes this 'judicial' exemption. (*Hammons* v. *Superior Court,* 63 Cal.App. 700 . . . [219 P. 1037].)"

Furthermore, since 1937, section 1334.4 of the Penal Code has been in full force and effect and reads as follows:

"If a person comes into this State in obedience to a subpoena directing him to attend and testify in this State, he shall not, while in this State pursuant to the subpoena or order, be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this State under the subpoena."

We conclude that under the facts and circumstances in this case the judgment was void, and there was no necessity for the defendant to show that he had a good defense to the action. (See *Fox* v. *Hale & Norcross S. M. Co.,* 108 Cal. 369 [41 P. 308]; *Cadenasso* v. *Bank of Italy,* 214 Cal. 562 [6 P.2d 944].)

The order appealed from is affirmed.

White, P. J., and Lillie, J., concurred.