## HIXON v. CHAMBERLIN.

No. 15874—Opinion Filed Jan. 19, 1926.

**1. Venue—Service of Process—Privilege of Immunity—Public Policy.**

The venue of actions not otherwise specifically provided for is in the county where defendant resides "or may be summoned," and it is a privilege supported by sound public policy that a citizen shall be immune from service of civil process while necessarily absent from the county of his residence attending court proceedings, either under process or voluntarily, as a party or witness.

**2. Same—When Immunity not Accorded.**

But in a criminal case, where a defendant has had a preliminary examination in a county other than that of his residence, is bound over upon probable cause and is released upon his own recognizance on his promise that his surety will come in and sign the bond, which the surety fails and refuses to do, the return thereafter of the defendant to that county for the purpose of getting other sureties and keeping out of jail is a matter of private concern to him alone, occasioned by his previous negligence and default, and service of civil process on him while there for that purpose is good service and will be sustained as against a claim of privilege.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Garvin County; A. C. Barrett, Judge.

Action by Mrs. L. E. Hixon against Byron T. Chamberlin, in which an order of attachment was issued and levied. On motion of defendant the trial court entered its order quashing the service of summons and dissolving the attachment, and plaintiff has brought the case here for review. Reversed and remanded, with directions.

This case was tried upon an agreed statement of facts, which is thus abstracted in the brief of defendant:

"Defendant in error, a resident of Oklahoma county, was arrested on a criminal charge issued out of the county court of Garvin county, and, after preliminary examination, made his bond before the court, the bond being approved upon his statement that a certain party residing in Pauls Valley would also sign the bond, and he was released from custody. Thereafter the party named refused to sign the bond and the

defendant, being in Oklahoma City, was directed by the county attorney of Garvin county over the 'phone to return to Garvin county at once and make a new bond, or strengthen that bond, or he would send an officer for him. Defendant immediately returned to Pauls Valley in obedience to that direction, and for that purpose only, and while there he was served with civil process in this suit. Defendant's motion to dissolve the attachment and set aside and quash the service of summons was sustained by the court upon his claim of his exemption from service of civil process under such circumstances and his right to be sued in the county of his residence."

From this order sustaining defendant's motion, the plaintiff has brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendant, respectively, as they appeared in the trial court.

H. G. Butts and S. J. Goodwin, for plaintiff in error.

Giddings & Giddings, for defendant in error.

Opinion by LOGSDON, C. The question presented by this proceeding is one of first impression here. Plaintiff quotes and relies on Comp. Stat. 1921, section 603, as being the only statutory provision applicable to the situation here presented, and as not comprehending and embracing the privilege here asserted. That section reads:

"A witness shall not be liable to be sued in a county in which he does not reside, by being served with a summons in such county, while going, returning or attending, in obedience to a subpoena."

Defendant's contrary contention is thus stated in his brief:

"The exemption does not alone depend upon the statute quoted by counsel exempting witnesses from service of process while attending court under subpoena, but rests upon the broad principle of public policy and the rules of the common law, and extends both to witnesses and parties."

Neither of these contentions is considered to be conclusive on the question here presented, though each is abstractly correct within certain limitations.

It is plaintiff's contention, in effect, that by reason of the fact that parties are competent as witnesses it was the intention of the Legislature, in enacting the above-quoted statute, to put into statutory form the rules of the common law which privileged from arrest or service under civil process both parties and their witnesses while attending court (Chitty's Black., Book 3, p.

289) ; but that, as this common-law rule did not extend the privilege to defendants in criminal cases, it was the intention of the Legislature, as to criminal cases, to limit the privilege to witnesses. It is not considered that the language of the statute justifies this distinction for the reason that defendants in criminal actions are parties and are competent as witnesses.

Defendant contends, in effect, that the privilege here asserted does not rest alone on the statute quoted, nor on the rule of the common law; but rests on the broad principle of public policy which seeks to expedite the work of the courts and to render more certain the administration of justice by encouraging the attendance of parties and witnesses for the trial of cases.

This court has had occasion several times to apply the provisions of section 603, Id., in behalf of parties and witnesses, residents of the state, while attending the trial of a civil action in a county other than that of their residence, and it has been uniformly held that parties as well as witnesses are entitled to the privilege under such circumstances. Clark v. Willis, 44 Okla. 303, 144 Pac. 587; Hume v. Craigin, 61 Okla. 219, 160 Pac. 621; Commonwealth Cotton Oil Co. v. Hudson, 62 Okla. 23, 161 Pac. 535; Bearman v. Hunt, County Judge, et al., 68 Okla. 96, 171 Pac. 1124. In Burroughs v. Cocke & Willis, 56 Okla. 627, 156 Pac. 196, the privilege was sustained in favor of a nonresident of the state, who came into the state for the purpose of taking depositions to be used in the trial of a case. In Livengood v. Ball, 63 Okla. 93, 162 Pac. 768, the privilege was denied to a nonresident of the state, who came into the state to attend a trial of a cause in which he was a party, the denial of the privilege being based upon a difference in the law of this state and the law of the state of domicile of the defendant, which would result in denying to the resident plaintiff the full relief to which he would be entitled under the law of this state if compelled to sue in the state of defendant's residence.

When the decisions of other jurisdictions are examined they are found to be in hopeless conflict on the question here under consideration, and to follow either line of authorities as controlling is merely to make a choice between two opposing views, neither of which may be based entirely upon statutes identical with section 603, Id., nor influenced by a public policy wholly consonant with our own.

Under the provisions of Comp. Stat. 1921, section 207, all civil actions not otherwise specifically mentioned "must be brought in the county in which the defendant, or some one of the defendants, resides or may be summoned." The phrase "may be summoned," considered conjunctively with "resides," clearly implies personal volition on the part of the person to be served in placing himself where he "may be summoned." Residence is a matter of choice and of intention, and the presence of a person to be served in a county other than that of his residence must likewise be through choice and intention. This is a necessary corollary from the conjunctive use of this word and phrase. Civil process runs only to the county of the venue, except as otherwise specifically provided, and a witness is not obliged to obey a civil subpoena outside the county of his residence (Comp. Stat. 1921, sec. 594), but if he does so he is privileged from service of summons while so engaged by section 603, Id. This is a matter of legislative discretion exercised to expedite the work of the courts and to further the due administration of justice. On judicial interpretation of section 603, the principle of public policy has been invoked to embrace within the purpose and intent of the statute litigants, and even parties at interest in civil actions, and also their voluntary appearance as well as under process. (See cases above cited.)

On the other hand, criminal process runs throughout the state (Comp. Stat. 1921, sections 2450, 2828, 2838). No defendant or witness in a criminal case is free from compulsion in attending the trial of a criminal case, if under legal process to do so. Witnesses so attending criminal trials under process are within the express terms of the statutory privilege. But there is no public policy which operates to encourage offenders against the criminal laws of the state by exempting them from civil process to redress a private wrong in the county where the crime was committed, if summoned therein. They may be arrested anywhere, may be returned to the county of the crime, and may be imprisoned in default of bail. In a proper case the principle of public policy might be invoked to protect a defendant in a criminal case, while attending trial in the protection of his constitutional and legal rights, from being harrassed by service of civil process in a county other than that of his residence. But the principle of public policy which would protect him in such a case "is the privilege of the court, rather than of the defendant." Stewart v. Ramsey, 242 U. S. 128. It is based upon the necessities of judicial administration, which must remain unembarrassed and untrammeled.

In the instant case, and under the agreed statement of facts, no criminal action was pending against the defendant in any court of record at the time he went to Pauls Valley and was served with summons in the instant action. He had just been given a preliminary examination before a committing magistrate and had been bound over upon a showing of probable cause. His bond had been fixed at $1,000, but he had been released upon his own recognizance upon his promise that his surety would come in and sign the bond. This the surety failed or refused to do. His return to Pauls Valley to obtain other sureties was a matter of private concern to him alone, and was for the purpose of avoiding arrest and imprisonment under the order of the committing magistrate, which danger of arrest and imprisonment had been incurred through his own negligence and default. Constructively, at least, he was under arrest and in custody from the day of his default. If he had been actually in custody and confined in jail at Pauls Valley, no question could be raised as to the validity of the service of summons in the instant case. There is no public policy and no statutory enactment in this state to encourage those charged with crime to keep out of jail by making bond. It is a right granted to them by Constitution and statute, but no premium is placed on the exercise of that right.

It is urged by defendant that to deny the privilege in the instant case would enable persons to act in concert with an unscrupulous county attorney, and by procuring the issuance of warrants on baseless criminal charges, bring citizens from their homes into other counties for the service of civil process against them there. Little danger is to be apprehended from this source. The laws against false imprisonment and malicious prosecution, against conspiracy and against corruption, afford ample safeguards against abuses. The liberality of the courts in relieving against fraud is a further guaranty that the rights of the citizen will be respected as to venue.

For the reasons herein stated, this cause is reversed and remanded, with directions to the trial court to vacate its order sustaining the motion to quash service and dissolving the attachment, and for further proceedings not inconsistent with the views herein expressed.

By the Court: It is so ordered.