[Civ. No. 31658. First Dist., Div. One. Aug. 1, 1973.]

CLIFFORD SEVERN, Plaintiff and Appellant, v.
ADIDAS SPORTSCHUHFABRIKEN, ADI DASSLER K. G., ADIDAS
FABRIQUES DE CHAUSSURES DE SPORT et al., Defendants and
Respondents.

COUNSEL

Richard G. Mansfield for Plaintiff and Appellant.

Broderick, McNeil & Spencer and John R. Broderick for Defendants and Respondents.

OPINION

ELKINGTON, J.—Plaintiff Clifford Severn, doing business as Clifford Severn Sporting Goods, commenced an action in California against the three defendant European corporations named in the caption and defendant Horst Dassler, a resident of France. It is conceded (at least no one contends otherwise on this appeal) that defendants had "certain minimum contacts with [California] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (See *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057]; *Atkinson* v. *Superior Court,* 49 Cal.2d 338, 345-346 [316 P.2d 960] [cert. den., 357 U.S. 569 (2 L.Ed.2d 1546, 78 S.Ct. 1381)].) California's courts thus had jurisdiction over the *subject matter* of the action. (See Code Civ. Proc., § 410.10.) Defendant Horst Dassler was one of the persons described by Code of Civil Procedure section 416.10 as authorized to receive service of summons on behalf of the defendant corporations.

One of the defendant corporations had commenced an action in the United States District Court in Florida. While attending that state for the sole purpose of giving his deposition in the federal court litigation, Horst Dassler was personally served with summons in the California action on behalf of himself and the defendant corporations.

Thereafter, in the California action, the defendants moved to quash the service of summons made upon them in Florida. The motion was based upon the so-called "immunity rule" which is stated by Corpus Juris Secundum as follows:

"Generally, witnesses in attendance on a court outside the territorial jurisdiction of their residence are immune from service of civil process while attending court and for a reasonable time before and after in going to, and returning from, court." (72 C.J.S., Process, p. 1112, § 80, subd.

a. (1).) The rule is sometimes applicable to litigants, their attorneys, and others.

The superior court, on the basis of the immunity rule, entered an order granting defendants' motion. The instant appeal was taken by plaintiff Clifford Severn from that order.

The immunity rule is of common law origin, going back at least to the reign of Henry VI, and to a time when process (summons) was given effect by the body attachment, or arrest, of the defendant. (See 62 Am.Jur.2d, Process, § 136, p. 919; *Powers* v. *Arkadelphia Lumber Co.* (1896) 61 Ark. 504 [33 S.W. 842, 843]; *Mertens* v. *McMahon* (1933) 334 Mo. 175 [66 S.W.2d 127, 131, 93 A.L.R. 1285]; *Fisher* v. *Bouchelle,* 134 W.Va. 333 [61 S.E.2d 305, 308]; *Wangler* v. *Harvey* (1963) 41 N.J. 277, 284 [196 A.2d 513].) Its initial purpose was clear; it was to prevent the disruption of judicial proceedings which would usually attend the arrest of an attending witness. And it was calculated to allay the witnesses' fear of such arrest, thus encouraging them to voluntarily appear and aid in the administration of justice. Originally the rule applied with equal force to nonresidents of the state, and residents of the state who were *nonresidents of the county* from which the process issued or in which it was served. (See *Jacobson* v. *Hosmer* (1889) 76 Mich. 234 [42 N.W. 1110, 1111]; *Hicks* v. *Besuchet* (1898) 7 N.D. 429 [75 N.W. 793, 794-795]; *Lingemann* v. *Dehnke* (1929) 247 Mich. 597 [226 N.W. 259, 65 A.L.R. 1367]; *Hixon* v. *Chamberlin* (1926) 116 Okla. 77 [243 P. 183, 184, 46 A.L.R. 313]; *Mertens* v. *McMahon, supra,* 66 S.W.2d 127, 130; *Cotton* v. *Frazier* (1936) 170 Tenn. 301 [95 S.W.2d 45, 47]; *Meyers* v. *Barlock* (1937) 281 Mich. 629 [275 N.W. 656, 657]; *Tipton* v. *District Court of Fifth Judicial Dist.* (1953) 74 Idaho 65 [256 P.2d 787, 789].)

Through the years the immunity rule appears to have developed in a very haphazard fashion. Majority and minority rules, "voluntary" and "compulsory" tests, and other conflicting applications have appeared. (See generally, 62 Am.Jur.2d, Process, §§ 136-156, pp. 919-940; 72 C.J.S., Process, §§ 80-89, pp. 1112-1128.) This juridical confusion is pointed up in American Jurisprudence, Second, where discussing the rule's application in a criminal case, it is stated: "Five views have been taken, namely: that a nonresident appearing voluntarily is immune, and that he is not immune; that a nonresident appearing compulsorily is immune, and that he is not immune; and that he is immune whether his appearance is considered as voluntary or compulsory." (62 Am.Jur.2d, Process, § 152, p. 935.) A California reviewing court in 1930 found the conflicting authority on the sub-

ject "of but little aid" in its resolution of a witness immunity problem. (*Von Kesler* v. *Superior Court* (1930) 109 Cal.App. 89, 90 [292 P. 544].)

There has been much criticism of the immunity rule.

It is said: "The immunity cases have in most instances been determined by a sentimentality singular in the law. The courts have often been pre-occupied with concepts anachronistic at best with the result that the unfortunate [suitor seeking to serve summons] everywhere has been bearing a burden founded on neither good sense nor good law. [¶] The time is surely at hand when the problem of immunity should be reexamined and more rational and liberal solutions, wherever they are needed, arrived at." (Keeffe & Roscia (1947) 32 Cornell L. Q. 471, 489.) In 1963 the Supreme Court of New Jersey (*Wangler* v. *Harvey, supra,* 41 N.J. 277, 285), observing that "The doctrine of immunity moves in a direction wholly inconsistent with today's concept of justice," refused to apply the rule. The court (at pp. 285-286) stated: "We conclude that the problem of immunity is best disposed of by the application of the doctrine of *forum non conveniens*. Under this concept a court can prevent the imposition upon its jurisdiction of the trial of causes when it determines that for convenience of the litigants and witnesses, and in the interest of justice, the action should be instituted in another forum." And in 1972 an appellate court of Pennsylvania stated: "In view of the ease of modern transportation and communication, in view of new procedural methods for obtaining trial evidence from witnesses who are out of the jurisdiction, and in view of expanding concepts for the exercise of jurisdiction, perhaps the time has come for the total elimination of the immunity rule, but that issue need not be decided at this time." (Fns. omitted.) (*Fahy* v. *Abattoir,* 223 Pa. Super. 185 [299 A.2d 323, 325].)

The immunity rule was brought into clearer focus by the United States Supreme Court in *Lamb* v. *Schmitt* (1932) 285 U.S. 222, 225-226 [76 L.Ed. 720, 722-723, 52 S.Ct. 317], in this manner:

"The general rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit are immune from service of process in another, is founded, not upon the convenience of the individuals, but of the court itself. . . . As commonly stated and applied, it proceeds upon the ground that the due administration of justice requires that a court shall not permit interference with the progress of a cause pending before it, by the service of process in other suits, which would prevent, or the fear of which might tend to discourage, the voluntary attendance of those whose presence is necessary or convenient to the judicial

administration in the pending litigation. . . . In *Stewart* v. *Ramsay* [242 U.S. 128], the court said (p. 130), quoting from *Parker* v. *Hotchkiss*, Fed. Cas. 10,739:

" 'The privilege which is asserted here is the privilege of the court, rather than of the defendant. It is founded in the necessities of the judicial administration, which would be often embarrassed, and sometimes interrupted, if the suitor might be vexed with process while attending upon the court for the protection of his rights, or the witness while attending to testify.'

"It follows that the privilege should not be enlarged beyond the reason upon which it is founded, and that it should be extended or withheld only as judicial necessities require. . . . Limitations of it on this basis have been not infrequently made because the attendance upon the trial of a cause, however vital to the personal interests of those concerned, was not for the purpose of facilitating the progress of the cause. . . . or because the service was made on one whose attendance was not voluntary, and hence had no tendency to interfere with judicial administration."

California has adopted, and often applied, the rule as it was announced in *Lamb* v. *Schmitt*. (See *Velkov* v. *Superior Court* (1953) 40 Cal.2d 289, 291-292 [253 P.2d 25, 35 A.L.R.2d 1348]; *Gaines* v. *Superior Court* (1961) 196 Cal.App.2d 749, 753 [16 Cal.Rptr. 909]; *St. John* v. *Superior Court* (1960) 178 Cal.App.2d 794, 799 [3 Cal.Rptr. 535, 84 A.L.R.2d 415]; *Horn* v. *Superior Court* (1949) 94 Cal.App.2d 283, 285 [210 P.2d 518]; and see also *Mattison* v. *Lichlyter* (1958) 162 Cal.App.2d 60, 64 [327 P.2d 599]; *Franklin* v. *Superior Court* (1950) 98 Cal.App.2d 292, 295 [220 P.2d 8]; *Murrey* v. *Murrey* (1932) 216 Cal. 707, 710-712 [16 P.2d 741, 85 A.L.R. 1335] [cert. den., 289 U.S. 740 (77 L.Ed. 1487, 53 S.Ct. 658)].)

█ From *Lamb* v. *Schmitt* and the California authority we have cited, three distinct principles are made apparent.

First, the immunity rule extends no *rights* to the nonresident witness; it exists for the convenience and benefit of the court alone.

Secondly, the rule applies only where the nonresident witness *voluntarily* enters the territorial jurisdiction of the judicial proceedings. This principle rests on the premise that the witness would be secure against in personam process as long as he remained out of that jurisdiction: Witnesses who could choose to remain away would be encouraged by the immunity rule to enter in aid of "the judicial administration in the pending litigation."

Such an inducement is not necessary for those who in one way or another are *compelled* to enter the jursdiction; hence, as to them the immunity rule will not apply. An often expressed justification of the rule is that unless the witness voluntarily comes into the jurisdiction "there will be no opportunity to serve any process on him." (*Hardie* v. *Bryson* (E.D.Mo. 1942) 44 F.Supp. 67, 71; *Malloy* v. *Brewer* (1895) 7 S.D. 587 [64 N.W. 1120, 1122]; *Sherman* v. *Gundlach* (1887) 37 Minn. 118 [33 N.W. 549, 550]; 72 C.J.S., Process, § 80, p. 1112.) And it is said that if the rule did not exist, "the nonresidents would not [go into the foreign state], and service of summons on them could not be made." (*Breon* v. *Miller Lumber Co.* (1909) 83 S.C. 221 [65 S.E. 214, 215]; *Cooper* v. *Wyman* (1898) 122 N.C. 784 [29 S.E. 947]; 62 Am.Jur.2d, Process, § 137.)

The third principle is that the witness immunity "privilege should not be enlarged beyond the reason upon which it was founded, and that it should be extended or withheld only as judicial necessities require." (*Lamb* v. *Schmitt, supra,* 285 U.S. at p. 225 [76 L.Ed. at pp. 722-723].)

California has a strong public policy supporting, as capsulized by Mr. Witkin, "the right of a creditor to sue in the courts of the state in which he can find and serve the debtor." (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 581, p. 1393, and see *Murrey* v. *Murrey, supra,* 216 Cal. 707, 710; *People* v. *Wilson,* 213 Cal.App.2d 290, 292 [28 Cal.Rptr. 675].) This policy has been given expression by California's recently enacted Code of Civil Procedure sections 410.10-418.10 (pt. 2, tit. 5, entitled "Jurisdiction and Service of Process"). Expanding the reach of this state's process, section 410.10 now provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

Further implementing this policy is Code of Civil Procedure section 413.10 which, as pertinent, states: "Except as otherwise provided by statute, a summons shall be served on a person: . . . (b) *Outside this state but within the United States, as provided in this chapter* [relating generally to the service of process in California] or as prescribed by the law of the place where the person is served. (c) *Outside the United States, as provided in this chapter,* or [under certain circumstances] as prescribed by the law of the place where the person is served . . . ." (Italics added.)

By section 413.10 the Legislature has made it clear that, notwithstanding the law of the foreign jurisdiction where California's judicial process is served, such service is valid if made in a manner permitted by California's laws.

Our first inquiry is whether the service of summons in Florida on Horst Dassler, for himself and the defendant corporations, was made in a manner permitted under the laws of California. This leads us to the question whether Dassler, as a nonresident witness under the circumstances of the record before us, would be immune from service of summons under the law of this state.

We consider the third principle of the immunity rule as announced by *Lamb* v. *Schmitt, supra,* 285 U.S. 222, 225, and iterated by *Gaines* v. *Superior Court, supra,* 196 Cal.App.2d 749, 753, and *St. John* v. *Superior Court, supra,* 178 Cal.App.2d 794, 799: " '[T]he privilege should not be enlarged beyond the reason upon which it is founded, and . . . it should be extended or withheld . . . as judicial necessities require.' " The same rule was stated in *Murrey* v. *Murrey, supra,* 216 Cal. 707, 710: "[T]he [immunity] privilege should not be extended beyond the reason of the rule upon which it is founded." (See also: *Fitzhugh* v. *Reid* (E.D.Ark. 1918) 252 F. 234; *Lyf-Alum, Inc.* v. *C & M Aluminum Supply Corporation* (1966) 29 Wis.2d 593, 599 [139 N.W.2d 601].)

As pointed out, often in the history of our nation, and perhaps even in the present day, judicial process of a county court loses its force at the county boundaries. (See 72 C.J.S., Process, § 8, subd. b., pp. 997-998.) In such situations in personam process may not be served in any other county of the state. As said in *Fisher* v. *Bouchelle, supra,* 61 S.E.2d 305, 308, "[A] defendant residing in another county would not be required to come into the county where the cause of action arose, and thereby [would] be able to avoid the service of process in the county in which the cause of action arose." This situation called for application of the immunity rule, for it encouraged witnesses of one county to enter another without fear of being served with the latter county's process.

But gradually the states extended the reach of their counties' process to the states' borders. Since this permitted service of process on a state resident in any county of the state, the county of his residence no longer offered him asylum from another county's process. The reason for the immunity rule no longer existed in such cases. Recognizing this, courts began to deny application of the rule as between counties. In *Fisher* v. *Bouchelle, supra,* 61 S.E.2d 305, 308, the court stated that it had "never considered the immunity as existing where the service of process could be had in the county in which the defendant resided." In 1892, Missouri's civil process was effective throughout the state. Rejecting application of the immunity rule as between counties, the state's Supreme Court stated:

"It is said that public policy demands that suitors, witnesses, etc., should be privileged from the service of civil process while attending court, lest they be deterred from attending, and thus the administration of justice be obstructed. However, this might be as to nonresident witnesses, as to whom no process could issue, or as to nonresident suitors, as to whom it would be improper now to speak, it is sufficient to say that as to witnesses resident in this state we have process by which their attendance can be compelled from any part of this state, . . . Moreover, it could hardly be deemed the public policy of this state to deny the service of civil process on a party attending court, when we have a statute (section 2021) whereby a plaintiff may have a summons directed to 'any sheriff in the state of Missouri,' . . ." (*Christian* v. *Williams,* 111 Mo. 429 [20 S.W. 96, 99].)

We observe that until recently the force of California's in personam judicial process ended at the state's borders. (See 40 Cal.Jur.2d, Process, § 5, and the authorities there collected.)

 But as we have indicated, in 1969 California's jurisdiction and service of process statutes were updated and liberalized. The Legislature enacted Code of Civil Procedure sections 410.10, 413.10 and 415.10 which, where jurisdiction over the subject matter exists, collectively authorize personal service of summons on a defendant: "Within this state, . . . Outside this state but within the United States [and] Outside the United States, . . ." And as previously indicated such service outside the state may be made in the manner permitted by California law.

By virtue of these statutes, the reason for the immunity rule no longer exists in California, for nonresident witnesses and others may no longer remain in the state or country of their residence secure from the reach of this state's process. The rule no longer offers encouragement to nonresidents, who otherwise would be immune from service of its process, to enter this state in aid of its "judicial administration."

And since Horst Dassler and the defendant corporations could have been served at their places of residence or business in Europe, the rule has no legitimate application to them.

As we have pointed out, the immunity rule may not be applied where the reason for its application is no longer valid, or where it is not required by "judicial necessities." We therefore hold that it is no longer the law of California.

It has been suggested, however, that under principles of interstate comity we should concern ourselves with the law of the jurisdiction where service

of summons was effected on Horst Dassler and the defendant corporations, i.e., the law applied by the federal court or perhaps, by Florida.

As must by now be clear, it is the public policy of California that its suitors may serve process on their debtors wherever they may be found, whether in or out of the state.

It is a widely settled principle of the doctrine of interstate comity that foreign laws will not be given effect when contrary to the law, or public policy, or general interest of the citizens of the state of the forum. (*Biewend* v. *Biewend,* 17 Cal.2d 108, 113 [109 P.2d 701, 132 A.L.R. 1264]; *Estate of Henning,* 128 Cal. 214, 220 [60 P. 762]; *Whitney* v. *Dodge,* 105 Cal. 192, 199 [38 P. 636]; *Weisz* v. *Weisz,* 19 Cal.App.3d 676, 682 [97 Cal.Rptr. 18]; *Klinker* v. *Klinker,* 132 Cal.App.2d 687, 697 [283 P.2d 83]; *Thome* v. *Macken,* 58 Cal.App.2d 76, 79 [136 P.2d 116].) This rule is recognized and upheld by the federal courts. (*Wallan* v. *Rankin,* 173 F.2d 488, 492; *Anderson* v. *Hearst Pub. Co.,* 120 F.Supp. 850, 855.)

It follows that even if the immunity rule followed by the federal courts or the State of Florida should differ from that adopted by California, the public policy and law of this state would determine the validity of the service of process on Dassler.

Further, we observe that the federal courts also follow the immunity rule as pronounced by *Lamb* v. *Schmitt, supra,* 285 U.S. 222, the latest expression of the United States Supreme Court on the subject. (See *Walker* v. *Calada Materials Company,* 309 F.2d 74, 76; *Greene* v. *Weatherington,* 301 F.2d 565, 567-568 [112 App.D.C. 241]; *Government of the Dominican Republic* v. *Roach,* 280 F.2d 59, 61 [108 App.D.C. 51] [cert. den. 364 U.S. 878 (5 L.Ed.2d 101, 81 S.Ct. 166)]; *Kauffman* v. *Kennedy,* 25 F. 785, 785-786; *Morse-Koob* v. *Milner Export & Trading Co.,* 93 F.Supp. 344, 345.) So also does Florida. (See *State* v. *Circuit Court of Eleventh Judicial Circuit* (Fla.) 51 So.2d 792.)

Since Horst Dassler and the corporate defendants were subject to service of California's process in Europe, neither the federal courts nor Florida could have any legitimate interest in applying the immunity rule; it was not required by judicial necessity, the reason for its application having vanished.

It seems proper to point out that if the commencement of Clifford Severn's action in California, or the service of summons in Florida, results

in the unfairness of an "inconvenient forum" to defendants, Code of Civil Procedure section 410.30 is available for relief.

For the reasons stated the order quashing service of summons is reversed.

Molinari, P. J., concurred.

**SIMS, J.**—I respectfully dissent from the decision reversing the order quashing the service of summons. In my opinion each party's reference to the provisions of section 413.10 of the Code of Civil Procedure has led the court to apply what it deems, and what I might question to be (see fns. 2 and 3, *infra*), California law to a question of immunity which by comity, if not by full faith and credit, should be governed by Florida law.

Section 413.10 of the Code of Civil Procedure states in pertinent part: "Except as otherwise provided by statute, a summons shall be served on a person: . . . [¶] (b) Outside this state but within the United States, as provided in this chapter [§§ 413.10-417.40] or as prescribed by the law of the place where the person is served. . . ." Section 415.10 provides for service of a summons by personal delivery; section 415.40 reiterates that a summons may be served on a person outside this state in any manner provided in sections 415.10 to 415.50 inclusive, including section 415.40; and section 416.10 provides for service of summons on a corporation by delivering a copy of the summons and of the complaint to certain designated officers. It may be assumed that the law of Florida has similar provisions, and that summons has been served "as provided in [sections 413.10 to 417.40 inclusive of the Code of Civil Procedure]" *and* as prescribed by the law of Florida. Section 410.50 then provides, "(a) Except as otherwise provided by statute, the court in which an action is pending has jurisdiction over a party from the time summons is served on him. . . ."

There is no question but that California, being the state of the forum where the action in which process was issued is pending, can control the manner in which process shall be served, provided such notice as is required by constitutional principles of due process of law is given. "A state may not exercise judicial jurisdiction over a person, although he is subject to its judicial jurisdiction, unless a reasonable method is employed to give him notice of the action and unless he is afforded a reasonable opportunity to be heard." (Rest.2d Conflicts (1971) § 25, p. 109.) Subject to the foregoing restriction, the following rule generally applies: "The local law of the forum determines the method of serving process and of giving notice of the proceeding to the defendant." (*Id.,* § 126, p. 358.)

In this case, however, the issue is whether or not a defendant who has been personally served with process and has notice of the proceedings is entitled to immunity from the effect of that service of process because of the needs of judicial administration. All concerned with this case have fallen into the trap engendered by frequent reference to "immunity from service of process." If there were true immunity from service of process there would not be a case in the books on the subject. Everyone who has successfully asserted the "immunity," "privilege" or "exemption" has been served with process, but has been relieved of the effect of that service. Having thus cleared the air about "service," the claim of immunity, privilege or exemption can be reviewed in an isolated and more precise and illuminated setting.

## I

Regardless of the scope of, and the exceptions to the rule under consideration, all agree that its purpose is to expedite the administration of justice. "A state will not exercise judicial jurisdiction when inaction on its part is required . . . by the needs of judicial administration." (Rest.2d Conflicts (1971) § 83, p. 249.) The comment states, "In order to encourage their appearance, it is customary for a state to grant immunity from service of process to non-residents whose presence it deems necessary for the proper conduct of a judicial proceeding. Such immunity is usually granted to witnesses and to lawyers and in some states to parties as well. . . ." (*Id.,* p. 250. See also, 72 C.J.S., Process, § § 80-81, pp. 1112-1121; 62 Am. Jur.2d, Process, § § 136-156, pp. 919-940; 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § § 581-588, pp. 1393-1400; and 40 Cal.Jur.2d, Process etc., § 32, pp. 57-62.) In the usual case the process is that of the same forum which is seeking to protect the integrity of the pending litigation. Here, however, two forums are involved. Reflection indicates that the administration of justice, in the sense of administering a collateral pending suit in which the petitioners are involved, in this case is not a concern of this state, but is a problem of the United States District Court for the Southern District of Florida.[1] The courts of this state should not arbitrarily apply

---

[1]In *Higgins* v. *California Prune & Apricot Growers* (2d Cir. 1922) 282 F. 550, the Circuit Court of Appeals reversed an order which had refused to enjoin the plaintiff in an action in a New York federal district court from proceeding in three other actions on the same claims filed respectively in the federal district courts for the Northern and Southern Districts of California, and in the state court. The New York defendant, who instituted the appeal, was served while he was in California attending depositions as a party to the New York suit. The court found harassment, and that there had been sufficient service of the motion for an injunction on the corporation, which was the plaintiff in all the California actions, by service on the attorneys

their will so as to exercise jurisdiction over nonresident defendants served outside of this state when such service and exercise of jurisdiction will be deemed to interfere with the administration of justice at the place where the service was effected. I would therefore look to the law to be applied in the forum where the administration of justice is to be protected.

The rule to be followed by the federal courts was promulgated in 1916 in *Stewart* v. *Ramsay* (1916) 242 U.S. 128 [61 L.Ed. 192, 37 S.Ct. 44] where the court affirmed a judgment of the United States District Court for the Northern District of Illinois which was entered following the granting of a plea in abatement and the quashing of the service of summons upon a nonresident defendant who was personally served while he was within the district as the plaintiff and as witness in a suit against a third party in that very district court. The court stated the rule as follows: "The true rule, well founded in reason and sustained by the greater weight of authority, is, that suitors, as well as witnesses, coming from another State or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going." (242 U.S. at p. 129 [61 L.Ed. at p. 197].) The court further observed, "The state courts, with few exceptions, have followed this rule, applying it to plaintiffs as well as defendants, and to witnesses attending voluntarily as well as those under subpoena." (*Id.*, p. 130 [61 L.Ed. at p. 198].)[2] The

---

representing it in the New York action. The court observed, ". . . the privilege of the party from service of process is not merely his personal privilege, but it is the privilege of the District Court itself in which the original action is pending. [Citation.]" (282 F. at p. 559.)

[2]The principles applied by the United States Supreme Court in *Stewart* v. *Ramsay* often have been recognized in this state. (See *Hand* v. *Superior Court* (1919) 42 Cal.App. 168, 169 [183 P. 456]; *Murrey* v. *Murrey* (1932) 216 Cal. 707, 710 [16 P.2d 741, 85 A.L.R. 1335] [cert. den., (1933) 289 U.S. 740 (77 L.Ed. 1487, 53 S.Ct. 658)]; *Franklin* v. *Superior Court* (1950) 98 Cal.App.2d 292, 294 [220 P.2d 8]; *Slosberg* v. *Municipal Court* (1950) 101 Cal.App.2d 238, 240 [225 P.2d 312]; *Velkov* v. *Superior Court* (1953) 40 Cal.2d 289, 291 [253 P.2d 25, 35 A.L.R.2d 1348]; *Russell* v. *Landau* (1954) 127 Cal.App.2d 682, 688-689 [274 P.2d 681]; *Muller* v. *Muller* (1956) 141 Cal.App.2d 722, 728-729 [297 P.2d 789]; *St. John* v. *Superior Court* (1960) 178 Cal.App.2d 794, 798 [3 Cal.Rptr. 535, 84 A.L.R.2d 415]; and *People* v. *Wilson* (1963) 213 Cal.App.2d 290, 291 [28 Cal.Rptr. 675].)

In *Russell* v. *Landau*, *supra*, in applying the rule to a nonresident witness in a probate proceeding, the court observed after reviewing earlier California cases, "From such decisions it is now the universal rule that a nonresident witness while in attendance upon a trial in an alien state to give evidence enjoys immunity against service of civil process. [Citations.] No rule of practice is more firmly rooted in the jurisprudence of the United States. [Citation.] Such privilege is extended to suitors and witnesses to secure to them the right to give testimony and other assistance in the trial of an action." (127 Cal.App.2d at p. 689. For other applications of the principles see: *Fox* v. *Hall & Norcross S. M. Co.* (1895) 108 Cal. 369, 424 [41 P. 308]; *Minthorne*

court quoted from an early federal case [*Parker* v. *Hotchkiss* (E.D.Pa. 1849) 1 Wall.Jr. 269, Fed. Case No. 10,739] as follows: " 'The privilege which is asserted here is the privilege of the court, rather than of the defendant. It is founded in the necessities of the judicial administration, which would be often embarrassed, and sometimes interrupted, if the suitor might be vexed with process while attending upon the court for the protection of his rights, or the witness while attending to testify. Witnesses would be chary of coming within our jurisdiction, and would be exposed to dangerous influences, if they might be punished with a law suit for displeasing parties by their testimony; and even parties in interest, whether on the record or not, might be deterred from the rightfully fearless assertion of a claim or the rightfully fearless assertion of a defense, if they were liable to be visited on the instant with writs from the defeated party.' " (*Id.*, pp. 130-131 [61 L.Ed. at p. 198].) It finally noted, "Since this decision, the federal Circuit and District Courts have consistently sustained the privilege. [Citations.]" (*Id.*)

Thereafter, in *Page Co.* v. *Macdonald* (1922) 261 U.S. 446 [67 L.Ed. 737, 43 S.Ct. 416] the court affirmed a judgment entered after the District Court for the District of Massachusetts had sustained a plea in abatement filed by a nonresident Canadian defendant who was personally served within the district while she was in attendance before a special master appointed by the state superior court to hear the parties and their evidence in an action in which she was the plaintiff, and the federal court plaintiff was the defendant. In fact the federal court suit was for libel allegedly committed through the allegations of the complaint in the state court. It was contended that immunity cannot be claimed and sustained from the judicial process of a different sovereignty. The court overruled the contention and stated, "A federal court in a State is not foreign and antagonistic to a court of the State within the [immunity] principle and, therefore, as said in *Stewart* v. *Ramsay, supra,* 'suitors, as well as witnesses, coming from another State or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going.' And we can add nothing to what is said in support of the rule. 'It is founded' it is said, 'in the necessities of the judicial administration,' and the courts, federal and state, have equal interest in those necessities. They are both instruments of judicial administration within the same territory, available to suitors, fully available, neither they nor their witnesses

v. *Superior Court* (1963) 213 Cal.App.2d 748, 751 [29 Cal.Rptr. 265]; *Mattison* v. *Lichlyter* (1958) 162 Cal.App.2d 60, 63-65 [327 P.2d 599]; *Gerard* v. *Superior Court* (1949) 91 Cal.App.2d 549, 552-555 [205 P.2d 109]; and *Hammons* v. *Superior Court* (1923) 63 Cal.App. 700, 707-709 [219 P. 1037].)

subject to be embarrassed or vexed while attending, the one 'for the protection of his rights', the others 'while attending to testify.' " (261 U.S. at pp. 447-448 [67 L.Ed. at p. 739].)[3]

So here it may be assumed that if petitioner Dassler as a witness, and petitioner Adidas, whose representative he was, as a plaintiff, were served,

---

[3]Subsequently in *Lamb* v. *Schmitt* (1932) 285 U.S. 222 [76 L.Ed. 720, 52 S.Ct. 317] the court upheld a Circuit Court of Appeals decision which had overruled a district court order quashing service of process, in a second suit to recover funds of a debtor allegedly improperly diverted for attorney's fees, upon the nonresident attorney who came into the district to represent one of the defendant debtors in pending litigation in the same district which sought to recover assets allegedly disposed of in fraud of creditors. "Here the two suits, pending in the same court, are not independent of each other or unrelated. The second was brought in aid of the first, on which the petitioner, when served with process, was in attendance, charged with the duty of counsel in the case to assist the court. It was brought to secure rights asserted in the first suit which, but for the acts charged against the petitioner in the second, would have been secured in the first. [Citation.] The later suit was so much a part and continuation of the earlier one that the jurisdiction of the court over the first extended to the second without regard to citizenship of the parties or the satisfaction of any other jurisdictional requirements." (285 U.S. at p. 227 [76 L.Ed. at pp. 723-724].)

The court after reviewing the rule itself did observe, ". . . the privilege should not be enlarged beyond the reason upon which it is founded, and that it should be extended or withheld only as judicial necessities require. [Citations.] Limitations of it on this basis have been not infrequently made because the attendance upon the trial of a cause, however vital to the personal interests of those concerned, was not for the purpose of facilitating the progress of the cause. [Citations], or because the service was made on one whose attendance was not voluntary, and hence had no tendency to interfere with judicial administration." (*Id.*, at pp. 225-226 [76 L.Ed. at p. 723].) This observation on limitations made in other courts has no more or less weight than the earlier observation quoted above from *Stewart* v. *Ramsey*.

The exception to immunity promulgated in *Lamb* v. *Schmitt* has often been applied in this state. (See *Von Kesler* v. *Superior Court* (1930) 109 Cal.App. 89, 90-91 [292 P. 544]; *Horn* v. *Superior Court* (1949) 94 Cal.App.2d 283, 285 [210 P.2d 518]; *Slosberg* v. *Municipal Court* (1950) 101 Cal.App.2d 238, 240-241 [225 P.2d 312]; *Velkov* v. *Superior Court* (1953) 40 Cal.App.2d 289, 292-294 [253 P.2d 25, 35 A.L.R.2d 1348]; *St. John* v. *Superior Court* (1960) 178 Cal.App.2d 794, 798-800 [3 Cal.Rptr. 535, 84 A.L.R.2d 415]; *Gaines* v. *Superior Court* (1961) 196 Cal.App.2d 749, 753 [16 Cal.Rptr. 909].)

This state has also proceeded to exercise jurisdiction over objection when the person seeking immunity was not the attorney of record in the prior litigation (see *Tadge* v. *Byrnes* (1918) 179 Cal. 275, 276 [176 P. 439]); when the person served came into the state to attend a deposition for use in litigation in another state (see *Hand* v. *Superior Court, supra,* 42 Cal.App. 168, 170); when the nonresident was within this state on National Guard duty to which he had consented (see *Murrey* v. *Murrey, supra,* 216 Cal. 707, 711-714); when the nonresident came into the state to avoid litigation rather than to prosecute it, and only later filed the suit (see *Franklin* v. *Superior Court, supra,* 98 Cal.App.2d 292, 296) [although the assumption may be questioned the facts fall within the principle of *Lamb* v. *Schmitt* and other cases cited above]; and when the nonresident is a criminal defendant who is served after his conviction (see *People* v. *Wilson, supra,* 213 Cal.App.2d 290, 292-294).

while in Florida prosecuting their trademark infringement suit, by summons issued in a nonrelated action filed in the same federal district court, the district court would have quashed the service of summons as in *Stewart* v. *Ramsey.*

The United States Court of Appeals for the Fifth Circuit has stated, citing the three United States Supreme Court decisions referred to above, that the United States District Court for the Southern District of Florida, ". . . has broad discretion in determining whether to grant or withhold immunity to a nonresident from being served with process while a subpoenaed witness at [a] hearing" in that district. The opinion, in affirming the judgment of the trial court, fails to indicate how that discretion has been exercised. (*Gill* v. *Miller* (5th Cir. 1968) 393 F.2d 22.)

The fact that there may have been some compulsion for the individual petitioner to appear for his deposition did not destroy his immunity under the federal rule. In *McDonnell* v. *American Leduc Petroleums, Ltd.* (2d Cir. 1972) 456 F.2d 1170, an individual defendant from New Jersey who was served with process issued by the United States District Court for the Southern District of New York, was served while attending another action in the court under a subpoena duces tecum. The court upheld the lower court's denial of the defendant's motion to quash the service of process on the ground that the second action was related to the first. (See *Lamb* v. *Schmitt* (1932) 285 U.S. 222, 228 [76 L.Ed. 720, 724, 52 S.Ct. 317].) With respect to the contention that the immunity rule does not apply to a witness appearing under compulsion the court stated, "Although it is often said that the purpose of granting immunity is to encourage the voluntary attendance of nonresident witnesses, [the defendant] appears to be correct. . . . This extension of the federal immunity rule has been criticized [citations], but we think it inappropriate in the context of this litigation to undertake a re-examination of the question." (456 F.2d at p. 1179. See also *Shapiro & Son Curtain Corp.* v. *Glass* (2d Cir. 1965) 348 F.2d 460, 462 [cert. den. (1965) 382 U.S. 942 (15 L.Ed.2d 351, 86 S.Ct. 397)].)

In *Shapiro & Son Curtain Corp.* v. *Glass, supra,* the defendant whose motion to quash service of process was granted was a citizen of Britain, residing and domiciled in London and the director of an English corporation, which was the plaintiff in an action in the same federal district against a defendant who was also the plaintiff in the second suit. He was served while present being examined before trial. The court, after finding that the principles of *Lamb* v. *Schmitt, supra,* were inapplicable, continued, "The fact that [the defendant's] appearance was pursuant to court order does not affect the immunity. [Citation.] Further, although it is claimed

that he dominates and controls [the corporation] (the plaintiff in the first action), [he] does not lose his immunity on that account. Contrary to appellant's contention, immunity from service is not denied to plaintiffs. Page Co. v. MacDonald, supra." (348 F.2d at p. 462.)

*Page Co.* v. *Macdonald* indicates that the pendency of the federal district court suit would similarly require that a Florida state court should quash the service of a summons issued in a subsequent nonrelated state action and served under similar circumstances. Florida decisions indicate that such would be the case.

In *Rorick* v. *Chancey* (1937) 130 Fla. 442 [178 So. 112] (subsequently vacated and reversed on other grounds in *Rorick* v. *Chancey* (1938) 142 Fla. 290 [195 So. 418]) the plaintiff in the state action sought accounting and other relief from Rorick, a resident of the State of Ohio, and other defendants including an Ohio corporation, for which Rorick was concededly the agent. Rorick and one of the corporations, as have the petitioners in this case, had commenced an action in the United States District Court of the Southern District of Florida. At the time of service of process in the state action, Rorick was temporarily in Florida as a suitor and witness in the suit in the federal court. It was stated that his attendance was necessary for the purpose of the disposition of the cause and that he was brought to Florida for no other purpose. By special appearance the nonresident defendants sought to remove the second, state, action to the federal court. It was remanded to the state court and then the nonresident defendants sought to quash the service of summons. This motion was denied and they appealed. The Supreme Court of Florida recognized that the defendants were entitled to the immunity from service of process upon which petitioners rely in this case. The court stated, "It is contended here that H. C. Rorick was in Florida upon request of counsel in connection with pending litigation in the courts. It is admitted that he is a non resident. He was served with process by the Sheriff or other officer while in the office of his attorney while consulting on legal business and under these circumstances he was immune from the service of process. It appears to be established that witnesses and suitors in attendance in court outside of the territorial jurisdiction of their residence are immune from service of process while attending court and for a reasonable time before and after going to court and in returning to their homes. See 50 C.J. par. 227, page 548." (130 Fla. at pp. 452-453 [178 So. at p. 116].)[4]

---

[4]The court in that opinion affirmed the order of the lower court on the grounds the appearance for the purpose of removing the action to the federal court had constituted a general appearance (130 Fla. at p. 452 [178 So. at p. 116].) A rehearing

The rule quoted from *Rorick* v. *Chancey, supra,* has been generally followed by the Florida courts.[5] Any criticism or limitation on the general rule which gives immunity from service of process should be addressed to the federal or state courts in Florida.[6] In those cases which have noted that there was a choice of law, the protection of the administration of justice in the forum in which the litigant, witness, or attorney was first involved has been recognized as paramount. This question was presented

was denied January 27, 1938 (130 Fla. at p. 442 [178 So. at p. 112].) Thereafter a rehearing was granted, but an evenly divided court on October 26, 1938, adhered to the earlier decision (142 Fla. 290, 291-297 [195 So. 418, 419-422]); but on a further rehearing, after a vacancy on the court had been filled, a 4 to 3 decision, on June 2, 1939, reversed the order of the trial court which had refused to quash summons, because it found no general appearance (142 Fla. 290, 298-302 [195 So. 418, 422-423]); and on April 23, 1940 (almost five years after the nonresidents had been served) a final opinion denied a "second" petition for rehearing (142 Fla. 290, 302-306 [195 So. 418, 423-425].)

[5]*State* v. *Adams* (1941) 148 Fla. 426 [4 So.2d 457] [noncounty resident immune from service while attending court before his discharge under a criminal charge].

*State* v. *Circuit Court of Eleventh Judicial Circuit* (Fla. 1951) 51 So.2d 792 [recognizes and applies exception, for process issued in litigation incidental to or correlated with the subject matter of the proceedings, to nonresident witnesses and respondents in a will contest, who were served in collateral suit for declaratory relief involving same estate and issues].

*Lawson* v. *Benson* (Fla.App. 1962) 136 So.2d 353 [nonresident father appearing as the moving party and as a witness in child custody proceeding against former wife, held immune from process when served as a defendant in an action by an attorney to recover fees incurred in an earlier similar proceeding].

*Lienard* v. *DeWitt* (Fla. 1963) 153 So.2d 302 [nonresident witness, appearing with reference to employee's claim for workmen's compensation, held immune from service as defendant in employee's tort action] affirming *Lienard* v. *DeWitt* (Fla.App. 1962) 143 So.2d 42, and overruling *L. P. Evans Motors, Inc.* v. *Meyer* (Fla.App. 1960) 119 So.2d 301 [which had applied *State* v. *Circuit Court of Eleventh Judicial Circuit, supra,* to uphold service upon embezzling nonresident former employee, in a second suit by employer against employee, when employee appeared as witness in suit by employer against surety company].

*Bruner* v. *Robbins* (Fla.App. 1966) 191 So.2d 567 [nonresident defendant and witness in prior state court suit, held immune from service in similar, but not essentially connected suit].

*Crane* v. *Hayes* (Fla. 1971) 253 So.2d 435 [nonresident father, entitled to custody of daughter under North Carolina decree which had previously been recognized in Florida, but which was evaded there by mother, held to be immune from service of process in new action commenced by mother when he came into state to secure his daughter under the earlier ruling].

[6]Strong arguments have been advanced to show that the immunity from service of process rule should be abandoned or at least be extensively curtailed. (See *Wangler* v. *Harvey* (1963) 41 N.J. 277 [196 A.2d 513]; Note (1951) 26 Ind.L.J. 459; Keeffe & Roscia, *Immunity and Sentimentality* (1947) 32 Cornell L. Q. 471. Also note, Thode, *Special Appearance* (1964) 42 Tex.L.Rev. 279, 339; *Developments— Jurisdiction* (1960) 73 Harv.L.Rev. 909, 940, 941; Note (1920) 33 Harv.L.Rev. 721, 722.)

in *Marlowe* v. *Baird* (6th Cir. 1962) 301 F.2d 169 where the court with jurisdiction over the first action, the United States District Court for the Eastern District of Kentucky, had an opportunity to protect its own administration of justice because the second Kentucky state action was removed to that federal court. The defendant, a resident of Louisiana, was served in the state action while he was in Kentucky for the sole and only purpose of attending the trial of another action in the federal court in which he was the plaintiff, and the plaintiff in the action filed in the state court was the defendant. In upholding the action of the federal district court which had dismissed the second case for lack of jurisdiction because the defendant in that action was immune from the service of summons, the Court of Appeal stated in response to the contention that the service would have been valid under Kentucky law, "The rule of immunity from process is founded upon the necessity of judicial administration and operates to protect litigants and witnesses from being harassed, embarrassed or vexed while attending the trial of a case. [Citation.]

"We think that the District Court had a clear right to protect its suitors. This right does not stem from local law, but is inherent in the powers of the federal court. Immunity from process is certainly a procedural matter concerning which the federal court was free to follow decisions of the Supreme Court." (301 F.2d at p. 170.)

In *Lyf-Alum, Inc.* v. *C & M Aluminum Supply Corporation* (1966) 29 Wis.2d 593 [139 N.W.2d 601], the state court affirmed a trial court's order which had quashed service of summons upon a defendant, served individually and as an officer of a defendant corporation, because the service was effected while that individual was in the state giving his deposition pursuant to the rules of federal procedure as an officer of the corporation in an action brought by the corporation in the federal District Court for the Eastern District of Wisconsin. The court observed, "It makes no difference whether the original suit is in the federal court or the state court. The effect of denying immunity would be the same, either that nonresidents would not seek a forum in Wisconsin or the prosecution of the suit would be hindered or unduly penalized by the commencement of the second action." (29 Wis.2d at p. 600 [139 N.W.2d at p. 605].)

In *Durst* v. *Tautges, Wilder & McDonald* (7th Cir. 1930) 44 F.2d 507, the court applied the immunity rule to affirm the federal district court's order which, after the removal of a state action to the federal court, had quashed the service of summons on a nonresident attorney in a suit initiated in the Wisconsin state court even though the state court had denied

a similar motion. The facts revealed that the nonresident Minnesota attorney came into Wisconsin to take depositions in a pending Minnesota suit, and was then served in related Wisconsin actions, and while there for both purposes was served in the instant nonrelated suit. The court's reference to the Minnesota action indicates that it was concerned with protecting the administration of justice in that court, as well as in the intermediately instituted actions in the Wisconsin court. (See 44 F.2d at pp. 510-511. Cf. *Hand* v. *Superior Court* (1919) 42 Cal.App. 168, 170 [183 P. 456].)

## II

Neither Dassler nor his corporation could be effectively served in Florida on the cause of action now asserted by appellants if the action had been commenced in a state or federal court within that state. Can the State of California subject the respondents to its jurisdiction on that cause of action by service of process in Florida?

In *Murrey* v. *Murrey, supra,* the court observed, "This exemption from service of process is, of course, in derogation of the right which every creditor has to collect his debt by subjecting his debtor to suit *in any jurisdiction where he may find him.* Since this is so, the privilege should not be extended beyond the reason of the rule upon which it is founded. [Citation.]" (216 Cal. at p. 710, italics added.) It is apparent that the whole concept of immunity relates back to earlier concepts of jurisdiction. In *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057], Chief Justice Stone in creating new concepts for the exercise of jurisdiction over corporations, observed: "Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer* v. *Neff,* 95 U.S. 714, 733. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken* v. *Meyer,* 311 U.S. 457, 463." (326 U.S. at p. 316 [90 L.Ed. at pp. 101-102].) In *Pennoyer* v. *Neff* (1877) 95 U.S. 714 [24 L.Ed. 565] the court had said, ". . . it is laid down by jurists, as an elementary principle, that the laws of one State have no operation outside of its territory, except

so far as is allowed by comity; and that no tribunal established by it can extend its process beyond that territory so as to subject either persons or property to its decisions." (95 U.S. at p. 722 [24 L.Ed. at p. 568]. See also *Flexner* v. *Farson* (1919) 248 U.S. 289, 293 [63 L.Ed. 250, 253, 39 S.Ct. 97].) Under such concepts of jurisdiction there was no power to exercise judicial jurisdiction unless the defendant was found and served within the territorial jurisdiction of the court. Therefore there was reason to grant the privilege of exemption from exercise of that jurisdiction when its use would interfere with the administration of justice in a pending matter.

There have been developments in the concept of jurisdiction. In 1934 the American Law Institute approved the original Restatement of the Conflict of Laws. It dealt with "Jurisdiction in General" (ch. 3, §§ 42-73) and "Jurisdiction of Courts" (ch. 4, §§ 74-118). With respect to the former the Restatement provided in part, "§ 47. (1) A state has jurisdiction over a person: (a) if he is within the territory of the state, (b) if he is domiciled in the state although not present there, (c) if he has consented or subjected himself to the exercise of jurisdiction over him either before or after the exercise of jurisdiction." With respect to the jurisdiction of the courts there was but limited recognition of accountability for and the exercise of jurisdiction over an individual or a corporation for acts done within the state. (See Rest., Conflicts of Law (1934) §§ 77, subd. (1)(e), 84, 85, 92 and 93.[7])

---

[7]Section 77 provided: "(1) The exercise of jurisdiction by a state through its courts over an individual may be based upon any of the following circumstances: (a) the individual is personally present within the state, (b) he has his domicile within the state, (c) he is a citizen or subject owing allegiance to the nation, (d) he has consented to the exercise of jurisdiction, (e) he has by acts done by him within the state subjected himself to its jurisdiction. [¶] (2) In the absence of all these bases of jurisdiction, a state through its courts cannot exercise jurisdiction over individuals."

Section 84 provided: "A state can exercise through its courts jurisdiction over an individual who has done an act within the state, as to a cause of action arising out of such act, if, by the law of the state at the time when the act was done, a person by doing the act subjected himself to the jurisdiction of the state as to such cause of action."

Section 85 qualified section 84 as follows: "If a State cannot, without violating the Constitution of the United States, make the doing of certain kinds of acts within the State illegal unless and until the person doing the acts or causing them to be done has consented to the jurisdiction of the courts of the State as to causes of action arising out of such acts, the State cannot validly provide that the doing of the acts shall subject him to the jurisdiction of the courts of the State."

It gave the following comment, "(a) A State cannot without violating various provisions of the Constitution of the United States, such as those relating to the privileges and immunities of citizens of other States or of the United States, absolutely forbid the doing of certain kinds of acts within the State, nor forbid the doing of such acts unless the person doing the acts or causing them to be done has consented to the jurisdiction of the courts of the State, even as to causes of action arising out of such acts. In the absence of consent, the mere doing of such acts does not subject the actor to the jurisdiction of the courts of the State in which the acts are done."

Today it is recognized that a state has power to exercise judicial jurisdiction over an individual or corporation on the basis of an act done in the state or on the basis of causing an effect in the state by an act done elsewhere. (Rest.2d Conflicts (1971) § 27, subds. (1)(g), (h) and (i); and see Code Civ. Proc., § 410.10.) Section 36 of the 1971 Restatement provides: "(1) A state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from the act. (2) A state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action not in tort arising from the act unless the nature of the act and of the individual's relationship to the state and to other states make the exercise of such jurisdiction unreasonable." Section 37 provides: "A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable."

The genesis for the application of these sections to contract actions is found in *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199] where the court said, after reviewing earlier cases: "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

"Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." (355 U.S. at pp. 222-223 [2 L.Ed.2d at p. 226].)

Here the alleged transaction is international rather than interstate. The existence of, distinguished from the exercise of, jurisdiction, since it depends on actions or omissions or effects caused within the state, should

not be affected by the character or nationality of the actor. Any attack on the existence of jurisdiction would have to attack the allegations of the complaint which alleges losses and damages suffered in this state by the acts and omissions of petitioners. Such issue has not been raised.

The service of the process in Florida is not, as pointed out at the beginning of this opinion, a matter of acquisition of jurisdiction, but merely a question of notice that jurisdiction which exists is about to be exercised. The 1971 Restatement states the general rule in section 25 as follows: "A state may not exercise judicial jurisdiction over a person, although 'he is subject to its judicial jurisdiction, unless a reasonable method is employed to give him notice of the action and unless he is afforded a reasonable opportunity to be heard."

It is difficult to conclude that there has not been notice and a reasonable opportunity to be heard when process has been delivered to an individual defendant, who also is admittedly one empowered to receive process for partnership and corporate defendants. It must be concluded that the court acquired jurisdiction to proceed. Nevertheless the question remains as to whether jurisdiction should be exercised under the circumstances of this case. Sections 36 and 37 of the 1971 Restatement predicate the existence of jurisdiction upon whether its exercise is reasonable in the light of the nature of the acts or the effect produced, and the individual's relationship to the state of the forum. In *Wangler* v. *Harvey* (1963) 41 N.J. 277 [196 A.2d 513], in rejecting the immunity rule, the New Jersey court concluded, "Pursuant to the usual practice under a motion to dismiss based on *forum non conveniens,* the granting of immunity will be considered an exception rather than the rule. The court will retain jurisdiction unless there is an affirmative showing that it would violate traditional concepts of fair play and substantial justice to subject the defendant to its jurisdiction. If unfairness is shown, the court might dismiss outright or condition its dismissal upon certain assurances by the defendant. [Citation.]" (41 N.J. at p. 286 [196 A.2d at p. 518].)

In this state Code of Civil Procedure section 410.30 provides: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

The right to exercise the jurisdiction through notice was only fortuitously acquired because of the presence in Florida of a defendant, also a partnership and corporate officer, who although present was immune from federal

and state process because of local interest in the administration of justice. To subject petitioners to the jurisdiction of the courts of this state appears to place an unreasonable restraint on the right of the state and federal courts of Florida to employ what they deem is a reasonable rule to further proceedings in their courts. The witness-litigant, if knowledgeable, had a right to believe he would be exempt from service of process in nonrelated matters while giving his testimony in Florida.

On the other hand, this state has an interest in permitting its residents to pursue their just claims against those who by acts or effects within this state have caused damage to its citizens. The quashing of the service of summons in Florida does not preclude the courts of this state from acquiring jurisdiction. Plaintiff need not be relegated to bringing an action or actions in foreign countries. Subdivision (c) of section 413.10 of the Code of Civil Procedure provides: "Except as otherwise provided by statute, a summons shall be served on a person: . . . (c) Outside the United States, as provided in this chapter, or as directed by the court in which the action is pending, or, if the court before or after service finds that the service is reasonably calculated to give actual notice, as prescribed by the law of the place where the person is served or as directed by the foreign authority in response to a letter rogatory."

It may be said that resort to that procedure is an absurd repetition when the petitioners already have actual notice, and have been offered an opportunity to be heard. Nevertheless if any jurisdiction where assets of the petitioner can be found recognizes the Florida state and federal rule of immunity from process such jurisdiction would deny enforcement of the California judgment if the action were to proceed to an otherwise successful conclusion for plaintiff. If there are assets here, of course, the plaintiff may proceed by attachment. There also may be treaty complications upon the service of summons which would render the attempted exercise of jurisdiction by the courts of this state ineffective.

On balance, I conclude that regardless of what the courts of this state have or should hold as to immunity from service of process, the trial court in this case properly quashed the service of process under the peculiar circumstances of this case. I would affirm the order.