Filed 8/8/22  Pickpocket v. Pittman CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

<table>
<tr><td>

PICKPOCKET, LLC, et al.,

    Plaintiffs and Appellants,

v.

MATTHEW PITTMAN,

    Defendant and Respondent.

</td><td>

B313086

(Los Angeles County
Super. Ct. No. 20STCV32071)

</td></tr>
</table>

APPEAL from an order of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge.  Affirmed.

Law Offices of Olaf J. Muller and Olaf J. Muller for Plaintiffs and Appellants.

Ivie McNeill Wyatt Purcell & Diggs, Rodney S. Diggs and Antonio K. Kizzie for Defendant and Respondent.

———————————————

Pickpocket, LLC (Pickpocket) and its members, Michael Glasz, Zach Wechter and Misha Kornai, brought this action alleging that former member and manager Matthew Pittman (Matt)[1] misused Pickpocket funds. During his business dealings with Pickpocket, Matt had provided a Montana driver's license and an address in Venice, California. Pickpocket's attorney Olaf Muller mailed a copy of the summons and complaint to the Montana address on Matt's driver's license. Matt moved to quash service of summons on the ground that he now lived in Germany. The trial court granted the motion on that basis, finding compliance with the Hague Convention was required but lacking.

Pickpocket and its members appeal, contending the trial court erred in finding that compliance with the Hague Convention was required. They further contend they properly effectuated service on Matt pursuant to Code of Civil Procedure[2] section 415.40, which authorizes service of process by mail on persons outside California. We affirm the order quashing service.

## BACKGROUND

Pickpocket is a California limited liability company which specializes in creating and producing videos for internet-based companies. On or about August 10, 2019, Glasz, Wechter and Kornai entered into an Operating Agreement for Pickpocket with Matt. Pursuant to this agreement, Matt was a member of Pickpocket and its manager.

---

[1] Because we also refer to Matt's father Danny Pittman throughout this opinion, we use the men's first names for clarity.

[2] Further undesignated statutory references are to the Code of Civil Procedure.

2

On February 10, 2020, Glasz, Wechter and Kornai voted to terminate Matt as a member and manager, based on his misuse of Pickpocket funds. Among other things, Matt allegedly misused funds to "visit" Montana, to ship his personal DJ equipment to Germany, and to buy flowers for his girlfriend in Germany. Matt apparently paid back some but not all of the funds, and this lawsuit followed.

On August 25, 2020, appellants' attorney Muller sent the summons and complaint in this matter to Matt at the Montana address shown on his Montana driver's license by certified mail, return receipt requested. The copy of the license attached to Pickpocket's counsel's declaration shows an issue date of August 5, 2019. Muller did not explain the source of this copy. On appeal, appellants represent that Matt had provided the license to Pickpocket "as part of their prior business dealings." Matt also provided Pickpocket with an address in Venice, California.

Muller subsequently received a return receipt, but the receipt does not contain Matt's signature. It contains random numbers and letters which appear to be a post office code of some sort. The address is in fact the residence of Matt's father Danny Pittman (Danny). Danny stated under penalty of perjury that Matt had not lived with him for several years. According to Matt's California lawyer, Antonio Kizzie, Danny sent the summons and complaint to Kizzie. After conferring with Matt, Kizzie filed a motion to quash. In a declaration supporting the motion, Matt stated under penalty of perjury that he currently lived in Germany. The trial court granted the motion to quash.

# DISCUSSION

The court issued a minute order setting forth its ruling on the motion. The court first considered the service actually made in the United States, finding "Plaintiff served the Summons and Complaint ('Summons') on Defendant's father, Danny Pittman ('D. Pittman'), at D. Pittman's address at 730 S. Orange St. in Missoula, Montana 59801 ('Montana address'). . . . Plaintiffs received confirmation that the Summons had been received at the Montana Address via certified mail. . . . [¶] The Court notes that no proof of service has been filed regarding the Summons."[3]

The court briefly summarized the positions of the parties concerning this service. "Defendant argues that service at the Montana Address is defective. The Montana Address is not Defendant's usual mailing address, regular place of business, usual place of abode, or usual place of business, and D. Pittman is not a member of Defendant's household or in charge of Defendant's affairs." "In opposition, Plaintiffs argue that service was effectuated. In September 2020, Defendant's counsel emailed Plaintiffs' counsel stating he received the Summons that had been served at the Montana Address . . . . Plaintiffs contend that Defendant had actual notice. (*In re Marriage of Tusinger*

---

[3]     Appellants contend the facts in Muller's declaration in opposition to the Motion to Quash constitute proof of service. We question whether a pleading which is not labelled a proof of service of summons, and which contains (sworn) facts buried within the pleading which shows the mailing of the summons and complaint, qualifies as proof of service under section 417.20. The trial court nevertheless considered the facts showing the delivery of summons and complaint to the Orange Street address. We discuss the contents of Muller's declaration later in this opinion.

4

(1985) 170 Cal.App.3d 80, 82 [(*Tusinger*)].)"[4] The court then stated: "Plaintiffs' reliance on In re the Marriage of Tusinger is misplaced and inapplicable because it does not involve an internationally based party."[5]

The trial court then turned to the subject of service in Germany. The court found: "Defendant's domicile at the time he was served was in Germany. As such, the Court finds that service at the Montana Address was improper. Defendant's evidence shows that Defendant has established his own household in Germany, and that the Montana Address, which is on his driver's license, does not reflect his dwelling house, usual place of abode or usual mailing address."

The court explained: "Failure to comply with the Hague Convention procedures voids the service even though it was made in compliance with California law, and even though defendant had actual notice of the lawsuit. [Citations.] As such, the Defendant has not been properly served."

---

[4] Appellants accurately quoted *Tusinger*, which states that a plaintiff only has to show a defendant received "actual notice" of the summons and complaint for service pursuant to section 415.40. (*Tusinger*, *supra*, 170 Cal.App.3d at p. 82.) As appellants now acknowledge on appeal, under *Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 414, actual notice is not sufficient in and of itself.

[5] On appeal, appellants complain of the trial court's use of the term "internationally based party" because it is not found in any of California's service statutes. In context, it is clear that the trial court simply meant a party who resided outside the United States. Use of the alternate wording in no way shows the trial court ignored or misconstrued the language of the service statutes.

Finally, the court ruled "Defendant's request for an MSC that was requested concurrently with the Motion to Quash, did not constitute a general appearance. [Citations.]"

Appellants contend the trial court erred in granting the motion to quash. Appellants make two primary arguments: 1) the Hague Convention does not apply because appellant did not serve Matt by transmitting documents abroad and 2) service on Matt at the Montana address was permissible pursuant to section 415.40 and was properly effectuated. Appellants also contend that Matt made a general appearance in this action, which relinquishes all objections to defective service of process.

"When the evidence of jurisdictional facts is not in dispute, the issue whether the defendant is subject to personal jurisdiction is a legal question subject to de novo review. [Citation.] When evidence of jurisdiction is in dispute, we accept the trial court's resolution of factual issues, draw all reasonable inferences in support of the trial court's order, and review the trial court's determination of factual issues for substantial evidence." (*Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 17.)

A. *The Hague Convention Applies to Service under the Facts of This Case.*

Appellants contend the Hague Convention does not apply to this action because they did not send the summons and complaint abroad, but only to Montana.

Application of the Hague Convention is not left to the discretion of a plaintiff. It applies when there is occasion to transmit a judicial or extrajudicial document for service abroad. As the California Supreme Court recently explained, "*whether* 'there is occasion to transmit a judicial or extrajudicial

6

document for service abroad' ([Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 362, T.I.A.S. No. 6638]) is determined by reference to the law of the sending forum, in this case California." (*Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125, 138.)

California's rules on service of process are based on the location of the person to be served and fall into one of three categories: 1) a person inside California; 2) a person outside California but within the United States; and 3) a person outside the United States. (§ 413.10.) When a person is outside the United States, California's rules on service of process "are subject to the provisions of the Convention on the " 'Service Abroad of Judicial and Extrajudicial Documents' in Civil or Commercial Matters (Hague Service Convention)." (§ 413.10, subd. (c).) Thus, as we have previously explained, when a defendant is a resident of a foreign country at the time service was attempted, "plaintiff was required to show that service of process on defendant comported with the Hague Convention regarding service on an individual in a foreign country, or a proper basis for why the Hague Convention did not apply." (*Lebel v. Mai* (2012) 210 Cal.App.4th 1154, 1160 (*Lebel*).)

The trial court made a factual finding that Matt's domicile was in Germany. There is substantial evidence to support this finding in Danny's declaration that Matt had not lived with him for several years and Matt's declaration that he currently lives in Germany. In addition, documents offered by appellants in opposition support Matt's statement. In a letter sent to Matt's attorney in March 2020, appellants claimed Matt misused

7

appellant's funds to "visit" Montana, to ship his personal DJ equipment to Germany and to buy flowers for his girlfriend in Germany. In a March 2020 letter, Matt's attorney wrote Matt "flew back to the states multiple times attempting to talk with you in person to no avail."[6]

Appellants did offer evidence that Matt used the Orange Street address when he renewed his Montana driver's license in August 2019, before he moved to Germany. Even assuming for the sake of argument that Matt should have, but did not, update his address with the Montana DMV or relinquish his Montana driver's license when he subsequently moved to Germany, appellants did not provide any citations showing Montana law treated a person who moved out of state but failed to update or relinquish their driver's licenses as continuing to be a Montana resident on the basis of the license address alone.[7] At most, such failure might have been viewed by the trial court as evidence which conflicted with Matt's statement that he resided in Germany. The trial court, however, resolved any such potential conflict in favor of Matt's claim of German residency and since the trial court's finding is supported by substantial evidence, we uphold it.

Because Matt was a resident of Germany, appellants were required to show either compliance with the Hague Convention or

---

[6]  This is consistent with Matt's attorney's representation in the trial court that Matt had moved to Germany to work and live with his fiancée.

[7]  We use the term resident because, in the trial court, appellants contended the address on the driver's license was Matt's "home address." Appellants did not argue in the trial court that the Montana address was merely a mailing address.

"a proper basis for why the Hague Convention did not apply." (*Lebel, supra,* 210 Cal.App.4th at p. 1160.) Appellants contend that the Hague Convention does not apply when service under the laws of California may properly be effected in the forum nation, here, the United States. Appellants cite a number of such cases concerning service of process. (*Severn v. Adidas Sportschuhfabriken* (1973) 33 Cal.App.3d 754, 763; *Wissmiller v. Lincoln Trail Motosports, Inc.* (Ill.Ct.App. 1990) [552 N.E.2d 295]; *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.* (C.D.Cal. 2008) 578 F. Supp.2d 1224; *Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694, 696.) These cases involve personal service or service on a foreign corporation's United States based subsidiary, general manager or agent for service of process and so do not assist appellants directly.

Appellants argue that section 415.40, which permits service on persons outside California "only requires that a plaintiff mail a Summons and Complaint to *any* mailing address for a defendant that is located outside of California but within the United States. After that, all a plaintiff needs to do is show that the defendant got the papers mailed to him." Thus, appellants conclude, if a foreign resident defendant has "any" mailing address in the United States, the defendant may properly be served there, and compliance with the Hague Convention is not required.

The contention that "any" mailing address may be used for service under section 415.40 can only be characterized as absurd. A phrase this broad would include any address ever used by a person to receive mail, even if the person has not used that address in a decade or more and does not know any person

currently present at that address.[8]  Not surprisingly, appellants have not cited any provision of California law governing service by mail for any purpose which permits the sender to use "any" mailing address for a person, and we are not aware of any such provision.  We note that the broadest permissible range of mailing locations in the authorities cited on appeal is found in section 415.20, which permits mailing a copy of the summons and complaint to the "person's dwelling house, usual place of abode, usual place of business, or usual mailing address" as part of substitute service.  (§ 415.20, subd. (b).)[9]

We see nothing in the language of section 415.40 which would permit the use of "any" mailing address.  Section 415.40 does not use the term "mailing address" at all, let alone the phrase "any mailing address."  It provides: "A summons may be

---

[8]      Perhaps appellants believe the term "mailing address" itself contains inherent limitations, such as current use by the defendant, but they do not identify any such limitations.

[9]      Appellants contend the mailing requirements of section 415.20 do not apply to section 415.40, and the trial court erred in ruling that appellants had to comply with them.  We will assume for the sake of argument that this is the law.  We agree the trial court used language similar to the language found in section 415.20, but note the trial court did not refer to that section.  The first use of the language simply involved the court summarizing Matt's arguments.  The second use came *after* the trial court had ruled that service at the Montana address was improper because Matt's domicile was in Germany.  We view it as mere surplusage. We have reviewed the court's ruling de novo, and reach the same conclusion, but for slightly different reasons, that is, we find that service on the Montana address was not proper under section 415.40 because Matt's place of residence was in Germany.

10

served on a person outside this state . . . by sending a copy of the summons and of the complaint *to the person to be served* by first-class mail, postage prepaid, requiring a return receipt." (§ 415.40, italics added.) When the person is in a foreign country, sending the summons and complaint "to the person" necessarily requires sending the summons and complaint to the foreign country. The Judicial Council Comment to section 415.40 reinforces the requirement that the document be sent to the person's physical location, explaining that the section requires the documents to be sent "to the person on whom service is desired, *generally at his place of residence*." (Judicial Council of Cal., reprinted at Deering's Ann. Code Civ. Proc. (2015 ed.) foll. § 415.40, p. 461, italics added.) In some instances, of course, such a location may not exist: for example, the person may have no fixed place of residence or the defendant may be a business or corporation which does not have a "place of residence" as that phrase is normally used. Since Matt does have a place of residence, and it is in Germany, that is where the summons and complaint must be sent.

We also note section 415.40 provides that service is "deemed complete on the 10th day after such mailing." This provision is reasonable because California law presumes that a letter is received "in the ordinary course of mail" only if the letter is "correctly addressed." (Evid. Code, § 641.) A letter cannot be "correctly" addressed to a person if the address is not the place where they live or work, or a place where they are currently and intentionally receiving mail. Appellants' interpretation rejecting such inquiry into the correctness of the mailing address used for service would render the completeness clause unreasonable.

11

Appellants point to another paragraph of the Judicial Council Comment, which states: "This method of mail service may be used to deliver process only to a person who is outside this state. In some cases, however, process may eventually be forwarded and in fact delivered to the addressee within this state. For example, such person may have given appropriate instructions to someone to forward his mail to a place within this state, or the plaintiff knows only such person's out-of-state address. Regular communication by mail must, of course, exist between the place of mailing and the place of delivery. (Cf. [Cal. Code Civ. Proc.,] § 1012.)"[10] (Judicial Council of Cal., reprinted at Deering's Ann. Code Civ. Proc. (2015 ed.) foll. § 415.40, p. 461.) We think the focus of the comment is a scenario where a person who is outside California and so subject to service pursuant to section 415.40 for some reason actually receives the summons and complaint within California: the Judicial Council Comment makes clear that the person's presence within California does not invalidate the service by mail.

The Judicial Council Comment does offer some support for service on a mailing address intentionally used by the person which does not reflect his physical location, *if* the summons and complaint is actually delivered to the person where he is physically located. Assuming for the sake of argument that is the case, appellants have not shown either such intentional use of a mailing address or such delivery here.

_____

[10] Section 1012 does expressly specify the permissible places of delivery under that section: "where the person on whom it is to be made resides or has his office."

B.      *Even Assuming Actual Delivery of Process Is Sufficient to Effect Service, Appellants Have Not Shown Actual Delivery.*

Appellants repeatedly state throughout their briefs that they offered evidence of "actual delivery" to Matt.  It is not clear what they mean by "actual delivery."  At some points, they appear to contend that the receipt of the summons and complaint at the Orange Street address constituted "actual delivery" to Matt.  They contend, for example, that "[n]either the statute nor the interpretive case law require the person receiving the mail at [Matt's] mailing address to be [Matt] himself."  They also appear to contend that compliance with the procedures of section 415.40, together with their "proof of service" was sufficient to show "actual delivery of the paper to [Matt] under [section] 417.20."

We agree there is no requirement that the defendant sign the return receipt.  (See, e.g., *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 498.)  When the defendant does not sign the receipt, "the California statutory scheme (Code Civ. Proc., §§ 415.40 and 417.20 read together) permits completion of service by mail when the return receipt is signed by a person so authorized by the defendant." (*Neadeau v. Foster* (1982) 129 Cal.App.3d 234, 236–237, fn. omitted; *Cruz,* at p. 498.)  Appellants, however, did not present evidence that the receipt was signed by Matt or by someone authorized by him.[11]  Muller stated in his declaration (which he claimed was the proof of service) that the return receipt showed "Pittman had received the Summons packet" but this is contradicted by the attached receipt itself, which contains the notation "AD35C19" in the "Signature"

---

[11]     There is no evidence Danny was authorized by Matt to receive or sign for Matt's mail.  The lack of a signature on the return receipt suggests the opposite.

13

box and the letters "AD" in the "Received by" box. Section 417.20, subdivision (a), provides that "proof of service shall include evidence satisfactory to the court establishing actual delivery to the person to be served, by a signed return receipt or other evidence." Appellants did not present a receipt "signed" by anyone as that term is normally understood.[12]

Section 417.20 does permit "other evidence" showing actual delivery to the person to be served, and at times appellants contend they have provided such evidence. They claim it is "undisputed that [Matt's] father 'forwarded' the Plaintiffs' Summons and Complaint packet to his son [Matt,]" and then later simply state as a fact that Danny " 'forwarded' them to his son" Matt They provide no record citations to support this claim.

" 'When a defendant challenges that jurisdiction by bringing a motion to quash, *the burden is on the plaintiff to prove the existence of jurisdiction* by proving, inter alia, the facts requisite to an effective service.' " (*Lebel, supra,* 210 Cal.App.4th at p. 1160. (*Floveyor Internat., Ltd. v. Superior Court* (1997) 59 Cal.App.4th 789, 793 (*Floveyor*).) Specifically, appellants must provide "evidence satisfactory to the court establishing actual delivery to the person to be served, by a signed return receipt or other evidence." (§ 417.20, subd. (a).) Appellants are not entitled to rely on Danny's failure to deny "forwarding" the summons and complaint to Matt, or on Matt's failure to deny actual delivery, as evidence. A defendant may "stand mute" until the plaintiff "makes at least a prima facie showing of the validity

---

[12] Perhaps this was the reason the court found appellants had not filed a proof of service.

14

of service." (*Floveyor,* at p. 794.)[13]  Appellants did not make a prima facie showing and did not meet their burden.

Appellants did not, as they claim, prove actual delivery to Matt through "sworn" admissions by Matt, his father Danny and Matt's attorney in their declarations.  The declarations of Matt, Danny and Kizzie describe delivery to Matt's father Danny, and Danny's forwarding of the documents to Kizzie.

Matt stated in his declaration: "It is my understanding that Plaintiffs attempted to serve me with a Summons and Complaint . . . by serving my father, Mr. Danny Lee Patrick Pittman ('Mr. D. Pittman') at 730 S. Orange St. in Missoula, Montana 59801." Danny acknowledged receiving the summons and complaint, but does not state that he sent the documents to anyone.  Matt and Danny both declared that Danny was not in charge of any of Matt's affairs.  Matt's lawyer Kizzie stated in his declaration that he was attaching a true and correct copy of the "Summons and Complaint served upon Mr. Danny Pittman in Missoula, Montana."  He does not state that he received a copy from Matt.

Appellants are not correct that Kizzie admitted in an email sent on or around September 14, 2020 that Matt had received the

---

[13]  We note that appellants, like the plaintiff in *Floveyor*, point to precedents which "involved circumstances where the defendants moving to quash service supported the motion with proof of defective service or lack of minimum contacts." (*Floveyor*, *supra*, 59 Cal.App.4th at p. 793.)  The fact that some defendants choose to proactively offer evidence in their motion showing defective service does not require other defendants to do so.  As the court in *Floveyor* explained, the rule is that the plaintiff has the burden of proof and a defendant may "stand mute" unless and until the plaintiff "makes at least a prima facie showing of the validity of service." (*Id*. at p. 794.)

summons and complaint or that Kizzie had received the summons and complaint from Matt. This email, attached as Exhibit 6 to Muller's declaration in opposition to Matt's motion to quash reads: "Please be advised that our firm has just been retained to defend Mr. [Matt] Pittman in this action, and received the Complaint that was served upon his father in Montana." This is simply a statement that Kizzie's law firm has "received the Complaint." It cannot reasonably be understood as an admission that Matt had received the complaint. Appellants are mistaken in equating this email to the one before the court in *Tusinger*. There is no similarity between Kizzie's email statement and the statement of the lawyer in *Tusinger* that he was "writing with reference to the divorce petition which [defendant] received a few days ago." (*Tusinger*, *supra*, 170 Cal.App.3d at pp. 82–83.)

It is unclear what appellants mean when they claim that "Pittman even attached copies (!) of Plaintiffs' Summons and Complaint . . to his Motion to Quash, which he had relayed to his counsel" and "Pittman literally *attached* copies of the Summons and Complaint that he received in the mail from Plaintiffs to his Motion to Quash. How can Pittman file a motion with exhibits attached that had been mailed to him . . . and then argue that he never received those same exhibits?" There is no evidence Matt sent the summons and complaint to Kizzie. If by "literally" appellants intend to suggest that Matt physically attached the documents to the motion, this borders on frivolous. There is absolutely no reason to think Matt had any physical involvement in the assembly of the motion to quash or Kizzie's declaration which attached the summons and complaint as exhibits. As for Matt's own declaration in support of the motion to quash, Matt

16

filed a declaration expressly stating he was in Germany when he signed his original declaration in support of the motion. Kizzie's possession of the summons and complaint does not show actual delivery to Matt.

Finally, appellants rely on Montana law to show that the address on the driver's license was a "proper mailing address." Appellants did not rely on Montana law in its opposition to the motion to quash and we question the relevance of this argument on appeal. They cite what appears to be a Montana administrative regulation pertaining to an original application for a driver's license and a section of Montana statute apparently about a requirement to notify the Montana Department of Motor Vehicles of any change of address. They have not, however, asked us to take judicial notice of those laws, as is required for us to consider them. (See Evid. Code, § 452, subd. (a).) Accordingly, we do not consider that law.[14]

---

[14] We note appellants have not offered any legal citation to support their contention that "Montana law itself makes clear that [Matt's] Montana address functioned as a proper mailing address at which he could and was served with summons," or its contention that "By holding onto his Montana address, [Matt] continues to be able to vote in Montana . . . and exercise similar Montana-state related rights and privileges."

We also note that under California law, if appellants were relying on the address on Matt's driver's license, issued in August 2019, as being the address on file with the Montana DMV in August 2020 when they mailed the summons and complaint to that address (and therefore a proper mailing address), the burden was on appellants to prove that fact.

C.    *Matt Did Not Make a General Appearance.*

Appellants contend that an email which Kizzie sent to Muller introducing himself as Matt's lawyer and indicating an intent to file a responsive pleading in the future constituted a general appearance and the trial court erred by "disregarding" this appearance.  Perhaps the court "disregarded" this claim because appellants did not make it in the trial court.

Section 1014 provides: "A defendant appears in an action when he answers, demurs, . . . gives the plaintiff written notice of his appearance, or when an attorney gives notice of appearance for him."

Appellants provide no legal authority or cogent reasoning to support their claim that an attorney's introduction to opposing counsel as representing a party could constitute a notice of appearance.  Generally, "the acts claimed to constitute a general appearance must amount to a showing of a 'purpose of obtaining any ruling or order of the court going to the merits of the case.' " (*Chilcote v. Pacific Air Transport* (1937) 24 Cal.App.2d 32, 35.)

A stipulation between attorneys to extend time is not a general appearance.  (§418.10, subd. (d).)

Actually filing a responsive pleading does not constitute a general appearance unless the pleading is filed before any motion to quash.  (§ 418.10, subd. (e) [noting this is an exception to § 1014].)  There is no basis to find that simply announcing an intent to file a responsive pleading constitutes an appearance when the filing itself need not.

18

## DISPOSITION

The order quashing service of process is affirmed. Respondents are entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

HARUTUNIAN, J.*

---

*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.